# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| QJ TEAM, LLC, AND FIVE POINTS HOLDINGS, LLC, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:23-cv-01013-SDJ (Consolidated with 4:23-cv-01104-SDJ) |
| v. | ) ) | |
| TEXAS ASSOCIATION OF REALTORS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

_____

**DEFENDANT J.P. PICCININI REAL ESTATE SERVICES, LLC, MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)**

_____

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ....................................................................................................... 1

FACTUAL ALLEGATIONS ....................................................................................... 2

ARGUMENT ............................................................................................................... 5

I.     PLAINTIFFS' UNSUPPORTED ALLEGATIONS MERELY CREATE A POSSIBILITY OF A CLAIM INSUFFICIENT TO WITHSTAND A MOTION TO DISMISS ....................................................................... 5

II.    PLAINTIFFS DO NOT ALLEGE AN ACTIONABLE SECTION 1 CONSPIRACY ............................................................................... 6

     A.   <u>The Consolidated Amended Complaint Fails to Allege Any Role in, Joining of or Furtherance of the Conspiracy.</u> ............................ 7

     B.   <u>Membership in a Trade Association and Compliance with its Rules Fails to Allege a Section 1 Conspiracy</u> .......................... 10

     C.   <u>The Consolidated Amended Complaint Does not Allege a Horizontal Conspiracy among Real Estate Brokers</u> ................................ 12

     D.   <u>A Plaintiff Cannot Allege a Conspiracy to Restrain Trade by Fixing Prices Cannot without Allegations of a Fixed Price</u> ..................... 14

III.   THE ALLEGATIONS DO NOT STATE FACTS TO SUPPORT A PER SE NOR A RULE OF REASON ANTITRUST VIOLATION .......................... 15

     A.   <u>The Allegations Do Not Support a Conclusion of a per se Violation</u> ....... 15

     B.   <u>A Defined and Plausible Geographic and Product Market must be Alleged to Support a Rule-of-Reason Claim and Plaintiffs do not Make Such Allegations</u> .......................................................... 18

CONCLUSION ........................................................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**<u>Cases</u>**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 5

*Bailey Lumber & Supply Co. v. Ga.-Pac. Corp.*, No. 08-cv-1394, 2009 WL 2872307
   (S.D. Miss. Aug. 10, 2009) ...................................................................................... 9

*Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013) ......................................... 7

*Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340 (8th Cir. 1995)................................ 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 6, 8

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028 (8th Cir. 2000)........ 13

*Concord Assocs., L.P. v. Ent. Properties Tr.*, 817 F.3d 46 (2d Cir. 2016) ................................... 18

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284 (5th Cir. 1988) ...................... 10

*Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761 (8th Cir. 2004) ...................... 15, 16

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248
   (11th Cir. 2015)................................................................................................ 19, 20

*Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764 (8th Cir. 2003) ........................................... 6

*Fayer v. Vaughn*, 649 F.3d 1061 (9th Cir. 2011)................................................................... 5, 6

*Gonzales v. Key*, 577 F.3d 600 (5th Cir. 2009) ......................................................................... 6

*Grace v. Re/Max Holdings*, No. 23-cv-06352, 2024 WL 2761188

   (N.D. Cal. May 29, 2024) ........................................................................................... 14, 15

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ......................................................................... 2

*In re Crop Inputs Antitrust Litig.*, ___ F. Supp.3d ___, 2004 WL 4188654
   (E.D. Mo. Sept. 13, 2024)........................................................................................... 7

*In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770 (D. Minn. Apr. 5, 2022)................... 13

*In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010) ...................... 11, 12

*In re Jan. 2021 Short Squeeze Trading Litig.*, 105 F.4th 1346 (11th Cir. 2024)......................... 16

*In re Online Travel Co. Hotel Booking Antitrust Litig.*, 997 F.Supp.2d 526
(N.D. Tex. 2014) ................................................................................................ 8

*In re Processed Egg Prods. Antitrust Litig.*, 2019 WL 5656101
(E.D. Pa. Oct. 31, 2019) ............................................................................ 13, 14

*Insulate SB*, 797 F.3d at 546 ................................................................................ 16

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ................. 18

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) .............................. 11

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908
(6th Cir. 2009) ................................................................................................. 20

*Kotteakos v. United States*, 328 U.S. 750 (1946) ................................................ 13

*L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414 (11th Cir. 1984) ......................... 19

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) .............................. 16

*Litovich v. Bank of America Corp.*, 568 F. Supp. 3d 398 (S.D.N.Y 2021) .................................... 8

*New Orleans Ass'n of Cemetery Tour Guides and Cos. v. New Orleans Archdiocesan
Cemeteries*, 56 F.4th 1046 (5th Cir. 2023) ................................................... 17

*O'Riordan v. Long Island Bd. of Realtors, Inc.*, 707 F. Supp. 111 (E.D.N.Y. 1988) .................. 17

*Ohio v. Am. Express Co.*, 585 U.S. 529 (2018) ................................................... 16

*Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999) ................. 17

*Realcomp II, Ltd. v. FTC*, 635 F.3d 815 (6th Cir. 2011) .................................... 17

*Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312 (7th Cir. 2006) ..................... 17

*Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278 (4th Cir. 2012) ................... 8, 17

*SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015) .............. 12

*Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) ......................................................... 15

*Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566 (11th Cir. 1991) ............... 17

*U.S. v. Multi-List, Inc.*, 629 F.2d 1351 (5th Cir. 1980) ....................................... 8

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004) ............. 14

*United States v. Realty Multi-List, Inc.*, 629 F.2d 1351 (5th Cir. 1980) ............. 17

*White & White, Inc. v. Am. Hosp. Supply Corp.,* 723 F.2d 495 (6th Cir.1983)..................... 19, 20

*Wilk v. Am. Med. Ass'n*, 895 F.2d 352 (7th Cir. 1990)................................................................ 10

*Worldwide Basketball & Sport Tours, Inc. v. NCAA,* 388 F.3d 955

   (6th Cir. 2004).................................................................................................................. 18, 22

### **Other Authorities**
ABA Antitrust Law Section, Antitrust Law Developments, p. 53 (9th Ed. 2022) ..................... 15
Sherman Act.................................................................................................................. 1, 10, 13

### **Rules**
FED. R. CIV. P. 12(b)(6) ...................................................................................................... *passim*

Defendant J.P. Piccinini Real Estate Services, LLC a/k/a JPAR Real Estate ("JPAR") submits this memorandum in support of its FED. R. CIV. P. 12(b)(6) Motion to Dismiss Plaintiff's Consolidated Amended Complaint.

## INTRODUCTION

The Court should dismiss the Consolidated Amended Complaint (ECF No. 199) for the following reasons:

Plaintiffs do not allege how JPAR joined the conspiracy that existed before it came into existence.  Without specific allegations showing how JPAR joined and furthered the conspiracy, the Consolidated Amended Complaint fails to allege a claim.

The Consolidated Amended Complaint fails to allege an actionable conspiracy between JPAR, on the one hand, and NAR, the Texas Association of REALTORS® and the local associations on JPAR's markets.  Several circuits have held that an allegation that members of a trade association have followed its rules is insufficient to plead a conspiracy in violation of Section 1 of the Sherman Act.

In order to survive this motion, the Consolidated Amended Complaint must allege facts showing JPAR conspired *with Plaintiffs' listing brokers*.  The listing brokers allegedly charged Plaintiffs an inflated commission, which the listing brokers then split with buyer's brokers.  Plaintiffs do not plead facts sufficient to show that JPAR and Plaintiffs' selling brokers communicated, much less that they

1

agreed to join each other in a conspiracy to overcharge Plaintiffs.  Nor does the Consolidated Amended Complaint adequately allege a horizontal conspiracy between JPAR and any other selling broker.

Plaintiffs' claim that JPAR committed a per se Section 1 violation should be dismissed.  A court may not find per se violation when the courts lack considerable experience evaluating the alleged restrictions.  Moreover, as noted immediately above, Plaintiffs have not alleged a cognizable horizontal conspiracy, which is the sine qua non for per se treatment.

The Consolidated Amended Complaint fails to define viable geographic or product markets, which mandates dismissal of Plaintiffs' Section 1 claim under the rule-of-reason.

## FACTUAL ALLEGATIONS

The Consolidated Amended Complaint makes the following allegations, taken as true for purposes of this motion only.

All Plaintiffs paid a commission to their listing brokers.  Consol. Amend. Compl. ¶¶ 96-98 (ECF No, 199).  Plaintiffs' listing brokers then disbursed a portion of the commission received from the seller to the buyer's broker[s] upon the completion of the sale.  *Id*.  The Consolidated Amended Complaint does not name or identify the buyer's brokers who allegedly received an inflated commission.

2

JPAR entered the business of real estate brokerage services in 2011, fifteen years after the adoption of the offer of compensation rule.  Consol. Am. Comp. ¶ 69. Plaintiffs allege nothing about JPAR encouraging the rule or being involved in MLS or Association activity related to the rule. Plaintiffs rely on JPAR obeying the rule as the basis for their claim.  All of JPAR's alleged involvement with MLS and local Associations comes from agents currently sitting on boards, but does not allege any action to implement or enforce the rule.  Consol. Amend. Compl. ¶ 139.

The Plaintiffs allege that a rule adopted in 1996 by a trade association named the National Association of Realtors ("NAR") made them pay a commission to the buyer broker. *Id.* ¶¶ 103–04, 107.  The Complaint repeatedly refers to the Mandatory Offer of Compensation Rule (the "Compensation Rule"), but never provides the text of the rule.  The Plaintiffs allege that NAR included the Compensation Rule in its 2019 Handbook on Multiple Listing Policy.  *Id.* ¶ 104.  The plain language of the Compensation Rule does not mandate that listing brokers offer buyer agents a specific commission.  The Compensation Rule states:

In filing property with the multiple listing services, participants make blanket unilateral offers of compensation to the other MLS participants and shall therefore specify on each listing filed with the service the compensation offered by the listing broker to the other MLS participants.  Handbook at 34.

3

The Handbook also states:

Multiple listing services shall not publish listings that do not include an offer of compensation expressed as a percentage of the gross selling price or as a definite dollar amount, nor shall they include general invitations by listing brokers to other participants to discuss terms and conditions of possible cooperative relationships.

*Id.* at 35.

The plain text of the Compensation Rule contemplates that a listing broker will offer to pay some level of commission to the buyer broker, but it does not dictate an amount, leaving the amount up to market participants.  The Complaint confirms that the Compensation Rule does not require that a seller offer a buyer agent any particular level of commission.   The Plaintiffs quote a Texas Association of Realtors ("TAR") rule that requires listing brokers to make an unspecified offer of compensation to buyer's brokers and disclose such offers.  *Id.* ¶ 122.  The Plaintiffs also rely on a portion of a TAR form that discloses to the seller if the listing broker agrees to pay another broker to show the property to buyers, and the form has blanks for the listing broker to complete, rather than any mandatory commission level or percentage.  *Id.* ¶ 126.  Finally, the Plaintiffs concede that prior to the Missouri verdict in late 2023, market participants expressly "allowed offers of compensation [of] $.01 or more" and merely required that listing brokers offer "some amount" to buyer brokers.  *Id.* ¶¶ 127–28.

Plaintiffs identify JPAR in Paragraph 69 of the Consolidated Amended Complaint.  In the same paragraph, plaintiffs allege sales volume, number of agents, and REALTOR® association memberships of JPAR.  Those are the only specific allegations regarding JPAR.

## ARGUMENT

## I.  PLAINTIFFS' UNSUPPORTED ALLEGATIONS MERELY CREATE A POSSIBILITY OF A CLAIM INSUFFICIENT TO WITHSTAND A MOTION TO DISMISS.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (holding that the requirement to plead sufficient factual support of claims "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (internal citations omitted).

A court does not need to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Id.* at 678; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*) ("[C]onclusory allegations of law

and unwarranted inferences are insufficient to defeat a motion to dismiss.") (quotation marks omitted); *Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (holding that a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.") (Internal citation omitted).

Factual allegations must include enough specificity to allow the court to infer facts supporting a claim.  "It follows that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Gonzales v. Key*, 577 F.3d 600, 603 (5th Cir. 2009).  As outlined in the introduction and more fully stated below, the allegations of the Consolidated Amended Complaint fail to reach the required standard.

## II.   PLAINTIFFS DO NOT ALLEGE AN ACTIONABLE SECTION 1 CONSPIRACY.

For multiple reasons, the Amended Complaint does not adequately plead that JPAR was part of an illegal conspiracy.  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 591 n. 10 (2007) (upholding district court's Rule 12(b)(6) dismissal because "a defendant seeking to respond to Plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin.") (internal citations omitted). *Twombly* makes clear that at the pleading stage in an antitrust case, each defendant is entitled to know how it is alleged to have conspired, with whom, and for what

purpose. *In re Crop Inputs Antitrust Litig.*, ___ F.Supp.3d ___, 2024 WL 4188654 (E.D. Mo. Sept. 13, 2024). "Each defendant is entitled to know what he or she did that is asserted to be wrongful," from the allegations of the complaint and a "complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). In other words, there must be facts sufficient to infer an actual combination with others to achieve the illegal goal.

### A. The Consolidated Amended Complaint Fails to Allege Any Role in, Joining of or Furtherance of the Conspiracy.

The conspiracy allegations of the Consolidated Amended Complaint contain nothing specific as to JPAR. Essentially Plaintiffs allege that the brokers belonged to the same trade group and used multiple listing services. According to Plaintiffs, these two actions substantiate they acted together to artificially inflate real estate commissions. JPAR entered the business of real estate brokerage services in 2011, fifteen years after the adoption of the offer of compensation rule. Consol. Am. Comp. ¶ 69. The current owner of JPAR, Cairn Real Estate Holdings, LLC ("Cairn") acquired JPAR 25 years after adoption of the rule. The Consolidated Amended Complaint alleges conspiracy to adopt an MLS rule going back to 1995-96. Plaintiffs allege nothing about JPAR encouraging the rule or being involved in MLS or Association activity related to the rule.

Merely alleging parallel business conduct exists, even if done consistently, without pleading a setting for a meeting of the minds to agree, cannot pass a Rule 12(b)(6) challenge.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  If membership in a national trade organization and participation in a facility of commerce necessary to create a market (the MLS) are enough "factual enhancement" to make a plausible suggestion of conspiracy, then *Twombly* means nothing.  Compare the allegations in the Consolidated Amended Complaint regarding JPAR to those in *Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, 290 (4th Cir. 2012).

In that case, plaintiffs alleged the brokerage defendant exercised control over an MLS board and enacted rules to create barriers to new brokers joining the MLS. In this case, JPAR simply joined the MLS.  The MLS rules complained of had been in effect for years.  Membership in an MLS is necessary to compete in a residential real estate market.  *Id.*; *U.S. v. Multi-List, Inc.*, 629 F.2d 1351, 1367-68 (5th Cir. 1980) (MLS database effectively responds to real estate market imperfections and membership is necessary to effectively compete).  JPAR joined various MLS in its markets, a step necessary for it to compete. Combining this with REALTOR® association membership simply alleges neutral landscape facts that cannot support an antitrust conspiracy.  *See In re Online Travel Co. Hotel Booking Antitrust Litig.*, 997 F.Supp.2d 526, 539-41 (N.D. Tex. 2014). The Plaintiffs fail to allege facts

showing when and how JPAR entered and joined an allegedly pre-existing conspiracy. *Bailey Lumber & Supply Co. v. Ga.-Pac. Corp.*, No. 08-cv-1394, 2009 WL 2872307, *5 (S.D. Miss. Aug. 10, 2009) (Plaintiff's failure to allege a time and method for a defendant joining the pre-existing conspiracy was one ground supporting dismissal of claims as to that defendant).

NAR and its members developed the allegedly anti-competitive rule in 1994-1996. MLS across the country adopted it during 1996-1998.  It is not enough to allege JPAR later became a member of NAR or of several MLS that enacted the rule. Plaintiffs must come forward with evidence that JPAR engaged in activities within NAR or the MLS that show a meeting of the minds with other members to keep the rule in place or thwart attempts to change it.[1]

The broker defendants who lost *Sitzer/Burnett* provide a stark contrast.  Keller Williams formed in 1983 and participated in NAR from then forward.   Re/Max formed in 1973 also participated in NAR during the development and implementation of the allegedly anti-competitive rule.  Anywhere Real Estate, Inc. is the parent of several well-known real estate brokerages/franchisors.  Two of the

---

[1] Adding JPAR's owner Cairn or its affiliates JPAR Franchise, LLC and Your Castle Real Estate, LLC (YCRE) as defendants will not change the analysis.  Cairn came into existence four years ago and played no role in NAR or the MLS its subsidiaries joined.  JPAR Franchise, LLC came into existence 10 years after JPAR.  YCRE began in 2004. long after the alleged conspiracy led to the adoption of the rule and also never held leadership positions in NAR or MLS it joined.

9

best known, Century 21 founded in1971 and a NAR member during the relevant time-period and Coldwell Banker formed in 1906 and active in NAR throughout the development and implementation of the allegedly anti-competitive rule. While HomeServices of America only adopted its name in 1998. Its predecessor, AmerUs Home Services, Inc., began providing real estate brokerage services under the AmerUs Group umbrella in 1985. It was a NAR member throughout. JPAR, its owner, and its affiliates did not exist and did not participate in NAR's formulation and implementation of the allegedly anti-competitive rule. There is no allegation beyond trade association and MLS membership of JPAR later combining with NAR and other brokers to protect or foster the rule.

### B. Membership in a Trade Association and Compliance with its Rules Fails to Allege a Section 1 Conspiracy.

At bottom, Plaintiffs assert that JPAR's membership in NAR – the largest trade association in the United States – and JPAR's alleged adherence to NAR's policies and guidelines is sufficient to plead a massive nationwide conspiracy between JPAR and NAR. "A trade association is not by its nature a 'walking conspiracy.'" *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 293-294 (5th Cir. 1988); *see also Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 374 (7th Cir. 1990). Indeed, several circuits have held that an allegation that trade association members have followed the association's rules, without more, is insufficient to plead a conspiracy in violation of Section 1 of the Sherman Act.

For example, in *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1045-1048 (9th Cir. 2008), merchants using credit card sales alleged that two consortiums of credit card companies and banks conspired to fix fees for credit card sales. Plaintiffs asserted that the defendants' membership and participation in the consortiums sufficed to show an agreement among the defendants to charge the fees set by the consortiums. The lower court dismissed the case for failure to state a claim and the Ninth Circuit affirmed. *Id.* at 1048. The appellate court explained that allegations that the defendants merely "adopt[ed]" or "follow[ed]" a rule governing fees were "insufficient as a matter of law" to plead a Section 1 conspiracy. *Id.*

In *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 311-313 (3d Cir. 2010), plaintiffs alleged that the defendants (insurance brokers) had conspired to conceal fellow brokers' receipt of commission payments in return for steering customers to certain insurers. To support their conspiracy claim, plaintiffs alleged that the defendants had conspired through their participation in a trade association, by which they "adopted" an allegedly anticompetitive policy governing disclosure of commission payments and adhered to that policy. *Id.* at 313, 349. The Third Circuit upheld the dismissal of the complaint, explaining that "neither defendants' membership in the [trade group], nor their common adoption of the trade group's suggestions, plausibly suggest conspiracy." *Id.* at 349. Nor did allegations "that the defendant brokers collaborated in crafting" the challenged policy "insofar as [they]

11

allegedly 'control[led] the affairs of [the trade association].'" *Id.*  The Third Circuit required far more than allegations of collaborative effort through an association to plead an individual member's conscious commitment to conspiracy.  *Id.* at 350.

Similarly, in *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 435 (4th Cir. 2015), a merchant alleged that members of trade groups conspired to impose anticompetitive industry standards.   The Fourth Circuit rejected the plaintiff's argument that the promulgation of these standards was sufficient to establish concerted action.   *Id.* at 436.   "In the usual case," the court explained, an "organization nor its participants will run afoul of antitrust law when they use ordinary processes to adopt unexceptional standards." *Id.*

Alleging that the members of a trade association showed a general commitment to follow its rules is, by itself, does not plausibly plead participation in a conspiracy.

### C. The Consolidated Amended Complaint Does Not Allege a Horizontal Conspiracy among Real Estate Brokers.

Even if the Court were to conclude that Plaintiffs have plausibly alleged an agreement between JPAR and NAR, Plaintiffs still would fail to state a claim.  The Amended Complaint does not sufficiently allege that JPAR ever agreed or even communicated with other brokers about the challenged NAR guidelines, let alone their potential impact on commission rates.  Plaintiffs' allegations of horizontal conspiracy between JPAR and other brokers rely on generic allegations of parallel

12

conduct followed by "a bare assertion of conspiracy." *Twombly*, 550 U.S. at 556. Such "vague references to concerted action," *Insulate SB*, 797 F.3d at 546, cannot survive a motion to dismiss.

Without an alleged agreement between JPAR and other brokers (most notably, the selling brokers who represented Plaintiffs), the alleged conspiracy fails because it is, at most, a "rimless" wheel conspiracy. That form of agreement – which resembles "separate spokes meeting at a common center . . . without the rim of the wheel to enclose the spokes" – is not "a single conspiracy" at all but, rather, an illustration of parallel conduct. *See Kotteakos v. United States*, 328 U.S. 750, 755 (1946).

Accordingly, all of the federal circuits that have addressed the question (the Second, Third, Fourth, Fifth, and Sixth Circuits) have "uniformly held rimless hub-and-spokes conspiracies do not violate § 1 of the Sherman Act" and dismissed Sherman Act claims where plaintiffs failed to adequately plead a horizontal agreement – that is, a "rim" connecting all of the spokes. *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *7 (D. Minn. Apr. 5, 2022). *See also Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1038 (8th Cir. 2000) ("[C]ommon membership [with competitors] in a trade association . . . is not probative of collusion as a matter of law."); *In re Processed Egg Prods. Antitrust Litig.*, 2019 WL 5656101, at *6 (E.D. Pa. Oct. 31, 2019) (holding that, to plead a

Section 1 conspiracy, "a plaintiff must evidence that alleged co-conspirators 'acted other than independently' in adhering to the trade association's programming or guidelines.") (citations omitted).

### D.   A Plaintiff Cannot Allege a Conspiracy to Restrain Trade by Fixing Prices Without Allegations of a Fixed Price.

Plaintiffs allege the conspiracy to restrain trade resulted in the Compensation Rule and it mandates inflated real estate commission levels.  Consol. Am. Compl. ¶¶ 3–4, 13–14, 99–100, 103, 109, 111–12, 118–19, 138, 143.  A court cannot accept the allegations contradicted by the actual text of documents relied upon by a plaintiff. *See Twombly*, 550 U.S. at 568 n.13.  If documents cited in a complaint that are central to the claims made, contradict the allegations in a complaint, the "exhibit and not the allegation controls." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

According to the Consolidated Amended Complaint, the Compensation Rule does not require a listing broker to offer a buyer's broker a specific commission— neither a specific dollar amount nor a percentage.  Consol. Am. Compl. ¶¶ 122, 126, 128, 137.   The Compensation Rule does nothing to dictate what level of compensation any party's broker receives on a home sale.  Thus, the Complaint alleges no facts showing the Compensation Rule could be a restraint on competition. *See Grace v. Re/Max Holdings*, No. 23-cv-06352, 2024 WL 2761188 (N.D. Cal.

May 29, 2024) (Holding that plaintiffs failed to make plausible allegations that the Compensation Rule evidenced an anticompetitive arrangement when it did not require a material offer of commission).

## III.   THE ALLEGATIONS DO NOT STATE FACTS TO SUPPORT A PER SE NOR A RULE OF REASON ANTITRUST VIOLATION.

To determine whether an agreement unreasonably restrains competition and becomes a conspiracy in violation of Section 1, courts apply one of two methods of analysis, depending on the nature of the agreement at issue.   "The 'prevailing standard' for assessing the effect on competition of most restraints is the rule of reason, which requires an analysis of the restraint's actual effect on competition in a relevant market."  ABA Antitrust Law Section, Antitrust Law Developments, p. 53 (9th Ed. 2022).   "Some categories of restraints, however, * * * are conclusively presumed to unreasonably restrain competition without analysis of the market in which they occurred, study of their actual effects on competition, or evaluation of their purpose.  Such agreements are considered illegal per se."  *Id*.

### A. The Allegations Do Not Support a Conclusion of a per se Violation.

Per se cases are the exception, not the rule.  *See Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("[Courts] presumptively appl[y] rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful."); *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 772 (8th Cir. 2004)

("The rule of reason is the prevailing standard for determining a restraint's effect in a relevant market.") (internal quotation marks and citation omitted).  Nevertheless, Plaintiffs allege they have pleaded a conspiracy that is illegal per se.  Consol. Amend. Compl. at ¶ 177 (ECF No. 199).  They are wrong for two reasons.

First, courts have had limited experience evaluating the effect of NAR's Compensation Rule on prices and competition.  *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).  "[A] *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue."  *Id*; *see also Craftsmen Limousine*, 363 F.3d at 773 ("Because of the strength of [the rule of reason] presumption, the per se analysis is appropriate only where experience with a particular kind of restraint enables the court to predict with confidence that the rule of reason will condemn it.") (internal quotation marks and citation omitted).  The *Sitzer/Burnett* action, tried last year in the United States District Court for the Western District of Missouri, is the *only* case in which a federal court has made final rulings on the legality of the Compensation Rule or other NAR policies.

Second, "[p]er se unreasonable restraints of trade are typically only 'horizontal restraints' – [that is,] restraints that are imposed between competitors." *In re Jan. 2021 Short Squeeze Trading Litig*., 105 F.4th 1346, 1355 (11th Cir. 2024) (quoting *Ohio v. Am. Express Co*., 585 U.S. 529, 540-41 (2018)).  Only a horizontal

conspiracy between direct competitors can support an allegation of a per se violation. *New Orleans Ass'n of Cemetery Tour Guides and Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1046, 1035-36 (5th Cir. 2023) (Affirming dismissal of per se claim as tour guide company and cemetery operator did not directly compete and, therefore, could not engage in horizontal conspiracy).  As shown immediately above, the Amended Complaint does not allege facts sufficient to support the existence of a horizontal conspiracy between JPAR and other brokers, including but not limited to Plaintiffs' listing brokers.

Courts apply rule-of-reason analysis in the few antitrust cases regarding MLS rules and policies.  *Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 279, 290 (4th Cir. 2012); *Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 819, 825-27 (6th Cir. 2011); *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 321 (7th Cir. 2006) (applying rule of reason); *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1014-15 (6th Cir. 1999); *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1579-80 (11th Cir. 1991); *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1365 (5th Cir. 1980). Up until the *Sitzer/Burnett* case there appeared to be "…no federal case in which a court has applied a per se analysis to an MLS."  *O'Riordan v. Long Island Bd. of Realtors, Inc.*, 707 F. Supp. 111, 115 (E.D.N.Y. 1988).  This Court should not follow the sole outlier.

## B. A Defined and Plausible Geographic and Product Market must be Alleged to Support a Rule-of-Reason Claim and Plaintiffs do not Make Such Allegations.

As an alternative to per se illegality, the Amended Complaint purports to state a Section 1 violation under the rule of reason.  In order to survive a Rule 12(b)(6) motion to dismiss in a rule-of-reason case, "Section One plaintiffs must define both (1) a geographic market and (2) a product market." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) (affirming district court's Rule 12(b)(6) dismissal for failure to properly allege product and geographic markets).  *Accord*, *Worldwide Basketball & Sport Tours, Inc. v. NCAA,* 388 F.3d 955, 962 (6th Cir. 2004) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim."); *Bathke v. Casey's Gen. Stores, Inc*., 64 F.3d 340, 345 (8th Cir. 1995) ("Antitrust claims often rise or fall on the definition of the relevant market.").

Although the parameters of a given market are questions of fact, "antitrust plaintiffs still must present enough information in their complaint to plausibly suggest the contours of the relevant geographic and product markets." *Jacobs*, 64 F.3d at 345.  *See also Concord Assocs., L.P. v. Ent. Properties Tr*., 817 F.3d 46, 53 (2d Cir. 2016) ("[I]n order to survive a motion to dismiss, it is appropriate for a district court to assess whether the plaintiffs' complaint asserts sufficient facts to allege plausibly the existence of both a product and geographic market.").

18

Plaintiffs have not pleaded a geographic market.  In truth, they have not even tried.  The Amended Complaint mentions "local real estate market[s,]" Amended Complaint ¶ 96, the "markets of Alabama," *Id*. ¶ 28, and "the United States' real estate markets," *Id*. ¶ 60, but these alleged markets are not defined, nor do Plaintiffs assert that they are *antitrust* geographic markets.

Nor could they be geographic markets under Section 1.  The relevant geographic market is "the area of effective competition in which a product or its reasonably interchangeable substitutes are traded."  *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 423 (11th Cir. 1984) (quotation omitted). In order to allege a valid geographic market, "a plaintiff must plead facts such as whether outside sellers are precluded from entering the market and whether consumers cannot realistically turn outside the geographic area[.]"  *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc*., 797 F.3d 1248, 1263 (11th Cir. 2015)*.*  "[E]conomic and physical barriers to expansion [such] as transportation costs, delivery limitations and customer convenience and preference" are relevant to this determination.  *Id*. (citing *L.A. Draper & Son,* 735 F.2d at 423).  The Amended Complaint does not address these essential considerations.

Plaintiffs have also failed to plead a product market.  The "reasonable interchangeability" standard is "[t]he essential test for ascertaining the relevant product market."  *White & White, Inc. v. Am. Hosp. Supply Corp.,* 723 F.2d 495, 500

(6th Cir.1983); *Duty Free Americas*, 797 F.3d at 1264 (same).    Reasonable interchangeability, in turn, "is assessed by considering (1) product uses (whether substitute products can perform the same function) and/or (2) consumer response (also known as "cross-elasticity"), defined as 'consumer sensitivity to price levels at which they elect substitutes for the defendant's product or service.'"    *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc*., 588 F.3d 908, 917 (6th Cir. 2009) (quoting *Worldwide Basketball,* 388 F.3d at 961).    The Amended Complaint alleges no facts about product uses or consumer-response (*i.e.*, cross-elasticity), which means it does not allege a valid product market.

This Court should dismiss the Consolidated Amended as it attempts to allege a Section 1 rule-of-reason claim.    Plaintiffs allege market power, but do not allege a market.    Consol. Amend. Compl. ¶¶ 149-152 but do not allege a market. ("Defendant, in collaboration with their co-conspirators, possesses market power in each relevant market, derived from their control of the local MLSs and their predominant share in the local market, particularly in this District.").

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint for failure to state a claim.    *See* FED. R. CIV. P 12(b)(6).

20

Respectfully submitted,

By: /s/*Marcus Angelo Manos*
Marcus Angelo Manos (pro hac vice) Fed. ID 4828
mmanos@maynardnexsen.com
**MAYNARD NEXSEN PC**
1230 Main Street, Suite 700
Columbia, South Carolina 29201
Telephone:  (803) 771-8900
Facsimile:  (803) 253-8277

**Carlos R. Soltero**
Texas State Bar No. 0791702
csoltero@maynarnexsen.com
**Gregory P. Sapire**
Texas State Bar No. 00791601
gsapire@maynardnexsen.com
**MAYNARD NEXSEN PC**
2500 Bee Caves Road
Building 1, Suite 150
Austin, TX 78746
(512) 969-640 (telephone)
(512) 359-5774 (facsimile)

**Carl S. Burkhalter (**pro hac vice)
cburkhalter@maynardnexsen.com
**MAYNARD NEXSEN PC**
1901 Sixth Avenue N, Suite 1700
Birmingham, AL 35203
Telephone:  205.254.1081
Facsimile:  205.254.1991

**Alexandra H. Austin** (pro hac vice)
aaustin@maynardnexsen.com
**MAYNARD NEXSEN PC**
205 King Street, Suite 400
Charleston, South Carolina 29401
Telephone:  (843) 579-7827
Facsimile:  (843) 414-8227

***ATTORNEYS FOR DEFENDANT J.P. PICCININI REAL ESTATE SERVICES, LLC (A/K/A JPAR REAL ESTATE)***

October 11, 2024

21

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served upon all counsel of record

below via the Court's electronic filing system on October 11, 2024.

/s/ Marcus Anglo Manos
Marcus Angelo Manos (pro hac vice)
Fed. Id. 4828